UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VIRUPAKSHA RAPARTHI,

                              Plaintiff,

-against-

RABOBANK INTERNATIONAL,

                              Defendant.
------------------------------------------------------------------X

Civ. 08-CV-3323

**FIRST AMENDED COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, Virupaksha Raparthi ("plaintiff" or "Raparthi"), by his attorneys, Beranbaum Menken Ben-Asher & Bierman LLP, complaining of defendant Rabobank International ("defendant" or "Rabobank"), alleges:

## NATURE OF ACTION

1. This action is brought to remedy claims of racial and national origin discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A ("Title VII"); 42 U.S.C. § 1981; the New York State Human Rights Law, Executive Law §§ 290 *et seq.*, (the "Human Rights Law"); the Administrative Code of the City of New York §§ 8-101 *et seq.* (the "Administrative Code"); and the common law.

2. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, attorneys' fees, and all other appropriate relief pursuant to federal and state law.

## JURISDICTION AND VENUE

3. On or about April 3, 2008, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the unlawful discriminatory acts alleged herein, and obtained a right to sue notice dated May 19, 2008.

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.§§ 1331 and 1343 and 42 U.S.C.§ 2000e-5(f)(3). This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. As the unlawful employment practices complained of herein occurred within, and defendant regularly does business within, the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C.§ 1391(b).

6. Contemporaneous with instituting this lawsuit, plaintiff submitted copies of the Complaint to the New York City Commission on Human Rights and Department of Law.

## PARTIES

7. Plaintiff, Virupaksha Raparthi, is an individual of Indian race and national origin residing in Queens County in the State of New York.

8. Defendant, Rabobank International, is a subsidiary of a foreign corporation, Cooperative Centrale Raiffeisen-Boerenleenbank B.A., and regularly does business in the State of New York, having an office located at 245 Park Avenue, New York, NY.

## FACTUAL ALLEGATIONS

9. Raparthi was employed by Rabobank from June 6, 2006 until his discharge on November 15, 2007.

10. Upon joining Rabobank, Raparthi had exceptional educational and business credentials. He had received an engineering degree from the prestigious Indian Institute of Technology and an MBA from the Wharton School of Business. He had worked three years for Merrill Lynch, in its Fixed Income group, and had run his own oil and gas environmental clean up business.

11. With Rabobank, Raparthi was Vice President of the Specialized Finance group, a division of Structured Client Solutions ("SCS"), working as an investment banker.

12. SCS had only five professionals: two in Specialized Finance (Raparthi and his supervisor), two in CDO Structuring, and the individual heading both groups, Stan Stratton ("Stratton").

13. With the exception of Raparthi, all the professionals working in SCS were white and born in the United States.

14. Raparthi's work performance was consistently excellent. When hired, Raparthi was given the goal of increasing Specialized Finance's monthly earnings in 2007 by $1 million. This represented a substantial increase since as of the time of Raparthi's hire, Specialized Finance was earning only approximately $3.5 million annually. As a result of Raparthi's efforts, Specialized Finance reached its $1 million per month earnings goal by the first quarter of 2007, and by July 2007, the group had exceeded its annual target budget.

15. Many of the trades executed by Raparthi will generate monthly income for Rabobank for two to five years into the future.

16. In August 2006, the head of CDO Structuring left Rabobank. Defendant did not hire a replacement for another eleven months.

17. During the eleven months that CDO Structuring was without a head, Rabobank had Raparthi spend approximately 50% of his time supporting CDO Structuring, all the while performing his demanding job with Specialized Finance.

18. Because he was performing essentially two jobs, Raparthi routinely worked 80 to 100 hours a week, rarely seeing his two-year old son and not taking any vacation.

19. Throughout this period, Rabobank promised Raparthi that it would hire someone to support him, but it never did.

20. Raparthi's mid-year and year-end reviews were excellent. At his mid-year and year-end review meetings, Stratton promised Raparthi that his 2007 bonus would exceed twice his previous year's total compensation. During these reviews, Raparthi was repeatedly promised that Rabobank would not terminate him because he was generating revenue for the bank and Specialized Finance was a core business area for the bank.

21. In reliance upon Stratton's representations, Raparthi decided to continue employment with Rabobank and effectively work two jobs. He passed up several opportunities, including at least one firm offer, to take positions with other firms.

22. Rabobank treated Raparthi significantly worse in the terms and conditions of his employment than it did a similarly situated white, American-born employee, Matthew Hays.

23. Raparthi and Hays were similarly situated in that they were employed by Rabobank for comparable periods of time, worked in SCS and reported to the respective heads of the SCS' two business groups.

24. Raparthi was a much better employee than Hays.

25. Raparthi had greater experience and superior skills than Hays. Unlike Raparthi, Hays had neither an MBA nor prior financial institutional experience. Raparthi also had a higher title than Hays. Raparthi was a Vice President while Hays was an Associate.

26. Raparthi had significantly more experience than Hays in quantitative modeling – an essential skill for both their jobs. Raparthi had over fourteen years of experience in quantitative modeling, six of which were in the financial services area, including an intensive two-year MBA in Finance at Wharton. Hays, on the other hand, had little more than one year of financial modeling experience prior to starting employment with Rabobank.

27. While at Rabobank, Hays had to rely on Raparthi to train him in such fundamental concepts as amortization schedules and prepayment speeds.

28. Raparthi worked harder than Hays. As noted, Raparthi routinely worked 80 to 100 hours a week. By contrast, during the four months preceding Raparthi's discharge, Rabobank permitted Hays to spend much of his time in the office preparing for the GRE and GMAT tests, in open view of all members of his group.

29. Raparthi was more profitable to the bank than Hays. As noted, Raparthi was instrumental in enabling Specialized Finance to exceed its 2007 monthly earnings goal. In contrast, Hays was responsible for modeling CDO Structuring's Nieuw Haarlem CDO deal. That deal resulted in a $65 million loss for Rabobank. Raparthi was the only member of SCS who opposed what proved to be a poorly thought out deal.

30. Throughout his employment, Raparthi had an excellent working relationship with, and made significant contributions to, other groups within the bank. Rabobank's Head of Credit Risk, the Head of Market Risk and senior professionals from

-6-

the bank's London and Utrecht offices explicitly acknowledged Raparthi's contributions. On numerous occasions, those offices asked Raparthi to lead projects when their own offices lacked the staff with the requisite experience and talent to do so.

31.     At all times, Raparthi was courteous to his co-workers, never complained despite his tortuous working schedule and was complemented by his supervisors for always comporting himself maturely and professionally.

32.     In contrast, Hays was notorious for his violent outbursts at work, yelling at people, and throwing things in anger. After one such outburst, Raparthi's supervisors told him that Hays' behavior was so unbecoming that he would be fired or terminated in the event of a lay off.

33.     Raparthi conducted himself with great propriety and his ethical conduct was beyond reproach. By contrast, in his professional dealings, Hays had serious ethical lapses, of which Rabobank, on information and belief, was aware.

34.     Rabobank effectively rewarded Hays for his misbehavior and frequent complaints about his excessive workload by assigning a junior person and a consultant to work with him. Rabobank, although it repeatedly promised to do so, never provided Raparthi with similar support, despite the fact that he was performing two peoples' jobs.

35.     Rabobank awarded Hays a larger 2006 bonus than Raparthi, notwithstanding Hays' behavioral problems and Raparthi's greater contribution to Rabobank's bottom line.

36.     Rabobank denied Raparthi's request for a much deserved raise in August of 2007, yet gave Hays a raise.

37.     In August 2007, Rabobank hired Robert Jacques, a white man, as Executive Director in CDO Structuring. Since September 2006, Raparthi had been

-7-

performing that positions' job responsibilities. Rabobank guaranteed Jacques payment of a 2007 bonus six to ten times the amount that it paid Raparthi for his 2006 bonus. When Jacques was laid off at the end of 2007, Rabobank paid him his entire bonus, even though he had only joined the firm in August 2007, while offering Raparthi, at the time of his termination, just a fraction of his previous years' bonus.

38. Rabobank allowed Hays to attend out-of-town professional conferences, but denied Raparthi those opportunities. On one such occasion, when the entire SCS team except Raparthi was out of town at conferences, some employees commented to him, "So, you are the lone Indian manning the fort."

39. Rabobank officials excluded Raparthi from deal-closing dinners, yet invited the white, American-born Hays to them.

40. On information and belief, Rabobank's refusal to allow Raparthi to attend out-of-town conferences and deal-closing dinners was because he is Indian, and, in particular, because Rabobank did not want an Indian as its public face. For the same reason, on information and belief, Rabobank excluded Raparthi from interviewing job applicants.

41. Rabobank's New York branch was largely segregated. A large number of Indians worked in the bank's back offices, but Raparthi was the sole Indian working in the front office.

42. Rabobank's corporate culture was tolerant of racial and ethnic prejudice. Thus, in 2007, at the Rabobank Americas Annual Meeting, a senior manager of the bank proudly stated that he would not hire "Mid-Easterners with scarves" in certain geographical areas of Amsterdam since "rich Jews" from those areas would avoid doing business with them. On information and belief, Rabobank failed to discipline the senior

manager for his statement approving discriminatory and stereotyping employment practices.

43. On or about November 15, 2007, Rabobank announced a reduction-in-force.

44. As part of the reduction-in-force, Rabobank eliminated the CDO Structuring group where Hays worked because, on information and belief, it was losing money.

45. Raparthi's group, Specialized Finance, survived the reduction-in-force because, on information and belief, it was a core area of the bank and continued to generate revenue.

46. Notwithstanding the survival of Specialized Finance and the demise of CDO Structuring, in the reduction-in-force Rabobank terminated Raparthi's employment but retained Hays.

47. As a further measure of Rabobank's discrimination, defendant assigned the clearly inferior Hays to assume the duties of the discharged Raparthi.

48. When later confronted with its clearly discriminatory actions in firing Raparthi and replacing him with Hays, Rabobank gave the pretextual and patently false explanation that Hays' quantitative skills were superior to Raparthi's, that he worked better with other groups within the bank and that Raparthi was somehow responsible for SCS previous year's losses.

49. When terminating Raparthi, Rabobank notified him that it would pay him $15,000 for his 2007 "performance," a much smaller amount that his 2006 bonus – notwithstanding promises made to him that his 2007 bonus would be in excess of twice his 2006 total compensation.

## FIRST CAUSE OF ACTION: VIOLATION OF TITLE VII

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 of this Complaint with the same force and effect as if fully set forth herein.

51. In violation of Title VII, defendant discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race and national origin, culminating in the unlawful termination of his employment.

52. In taking the above described discriminatory actions, defendant acted with malice and reckless indifference to plaintiff's rights under Title VII.

53. Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendant's actions.

## SECOND CAUSE OF ACTION: SECTION 1981

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

55. On the basis of race, defendant denied plaintiff equal rights and privileges as protected by 42 U.S.C. § 1981.

56. As a direct and proximate result of said acts, plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

57. In taking the above-described discriminatory actions, defendant acted with malice and reckless indifference to Raparthi's statutory rights.

### THIRD CAUSE OF ACTION: HUMAN RIGHTS LAW

58.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57 of this Complaint with the same force and effect as if fully set forth herein.

59.     Defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of his race and national origin, in violation of the Human Rights Law.

60.     As a result of the defendant's discriminatory actions, plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

### FORTH CAUSE OF ACTION: ADMINISTRATIVE CODE

61.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 60 of this Complaint with the same force and effect as if fully set forth herein.

62.     Defendant discriminated against plaintiff in the terms and conditions of his employment on the basis of race and national origin, in violation of the Administrative Code.

63.     In taking the above-described discriminatory actions, defendant acted with malice and reckless indifference to plaintiff's rights under the Administrative Code.

64.     As a result of defendants' discriminatory actions, plaintiff has suffered and continues to suffer mental anguish, emotional distress and other compensable injuries.

## FIFTH CAUSE OF ACTION: PROMISSORY ESTOPPEL

65. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 64 of this Complaint with the same force and effect as if fully set forth herein.

66. By reason of Rabobank's clear and unambiguous promise to pay plaintiff a 2007 bonus in the amount that would exceed twice his previous year's compensation, and plaintiff's reasonable and foreseeable reliance on this promise by foregoing other job opportunities, plaintiff suffered monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a. Declaring the acts and practices complaint of herein to be violations of Title VII, Section 1981, the Human Rights Law and the Administrative Code;

b. Enjoining and permanently restraining these violations of law;

c. Directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

d. Directing defendant to place plaintiff in the position he would have occupied but for defendant's unlawful conduct, and making her whole for all earnings and other benefits he would have received but for defendant's unlawful conduct, including but not limited to wages, commissions, other lost benefits, loss of good will, and interest thereon;

-12-

e.  Directing defendant to pay plaintiff compensatory damages, including damages for his mental anguish, denial of life's pleasures, pain and suffering and humiliation;

f.  Awarding plaintiff the costs of this action together with reasonable attorney fees, as provided by § 706(k) of Title VII, 42 U.S.C. § 2000e-6(k);

g.  Directing defendant to pay punitive damages, and

h.  Granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff respectfully demands that this proceeding be tried to a jury.

Dated:  New York, New York
        May 23, 2008

                            BERANBAUM MENKEN BEN-
                             ASHER & BIERMAN LLP

                    By:
                            /s/John A. Beranbaum
                            John A. Beranbaum (JB 7944)
                            80 Pine Street, 32nd Floor
                            New York, NY 10005
                            Ph: (212) 509-1616
                            Fax: (212) 509-8088

-13-

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2008, a true and correct copy of the foregoing document was sent via electronic mail to the Clerk of the Court and by other means to the following individuals:

Rabobank International
c/o Joseph Baumgarten, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036

                                                  /s/*Jennifer Smith*
                                                  Co-counsel for Plaintiffs